James R. CONNER; the Montana Wildlife Federation; the Madison-Gallatin Alliance, Plaintiffs,

v.

Robert BURFORD, in his official capacity as Director of the Bureau of Land Management; R. Max Peterson, in his official capacity as Chief Forester, United States Forest Service, Department of Agriculture; Erwin Steuke, in his official capacity as Area Manager, United States Fish and Wildlife Service, United States Department of the Interior; John R. Block, in his official capacity as Secretary of Agriculture, Department of Agriculture; Michael J. Penfold, in his official capacity as State Director of the United States Bureau of Land Management, State of Montana, Defendants.

No. CV–82–42–BU.

United States District Court,
D. Montana,
Great Falls Division.

March 12, 1985.

Thomas France, Missoula, Mont., Robert A. Nelson, Helena, Mont., for plaintiffs.

Perry E. Wallace, Jr., Dept. of Justice, Land & Natural Resources Division, Washington, D.C., Robert J. Brooks, Asst. U.S. Atty., Dist. of Mont., Butte, Mont., for defendants.

MEMORANDUM AND ORDER

HATFIELD, District Judge.

Before this court are motions for summary judgment by plaintiffs James R. Conner

and the Montana Wildlife Federation and by defendants The Bureau of Land Management, the Forest Service, and others, involving the issuance of oil and gas leases of vast areas of the Flathead and Gallatin National Forests. Jurisdiction over this action is based on 28 U.S.C. § 1331.

Plaintiffs ask the court to declare unlawful the decisions by the Chief of the Forest Service, the Director of the Bureau of Land Management and the Secretary of the Interior to deny plaintiffs' protests and appeals against the issuance of oil and gas leases in the Flathead and the Gallatin National Forests. Plaintiffs contend that defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, by failing to prepare and consider environmental impact statements ("EIS") prior to making decisions which will significantly affect the environments of the forests in question. Further, plaintiffs claim violations of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, by defendants in failing to sufficiently consult with the United States Fish and Wildlife Service before taking such action. The court is asked to set aside the agency actions as being not in accordance with the above cited law under authority of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Additionally, plaintiffs ask the court to enjoin the issuance of any more leases until the agencies comply with NEPA and ESA.

The federal defendants assert they complied with NEPA and ESA by conducting environmental assessments ("EA's"), obtaining biological opinions, and establishing variously applied stipulations, including a No Surface Occupancy Stipulation ("NSO"), in the leases which render the environmental impact and the danger to threatened and endangered species at the leasing stage insignificant. Defendants assert that subsequent analysis and decision-making, based on individual proposals for further activity on the leases, will continue to uphold the mandates of NEPA and ESA.

## I. THE NATIONAL ENVIRONMENTAL POLICY ACT

The NEPA challenge requires the court to determine whether the federal defendants initiated a "major federal action significantly affecting the quality of the human environment...." 42 U.S.C. § 4332(2)(C). If the defendants did initiate such an action, they are required to prepare and analyze an environmental impact statement before deciding what action should occur. *Id.* The standard of review of the decision to forego an EIS at the leasing stage is that of reasonableness. *Foundation for North American Wild Sheep v. U.S.*, 681 F.2d 1172 (9th Cir.1982). This court finds that the decision to forego an EIS was unreasonable. The EIS should serve to assist agencies in making decisions before any significant steps are taken which may damage the environment.

A central purpose of an EIS is to force the consideration of environmental impacts in the decision making process. (citations omitted.) That purpose requires that the NEPA process be integrated with agency planning at the 'earliest possible time,' 40 C.F.R. § 1501.2, and the purpose cannot be fully served if consideration of cumulative effects of successive, interdependent steps is delayed until the first step has already been taken.

*Thomas v. Peterson*, 753 F.2d 754, 757 (9th Cir.1985).

In this case, the leasing stage is the first stage of a number of successive steps which clearly meet the "significant effect" criterion to trigger an EIS.

Leases without NSO stipulations have been set aside for lack of NEPA compliance because they fail to ensure that environmentally damaging activity can be precluded by the federal agency. *Sierra Club v. Peterson*, 717 F.2d 1409 (D.C.Cir.1983). This ruling clearly extends to leases which allow surface occupancy on any part of the leased acreage.

This court must therefore consider the reasonableness of leasing lands which have an NSO stipulation covering the entire area of the lease. To use the NSO stipulation

as a mechanism to avoid an EIS when issuing numerous leases on potential wilderness areas circumvents the spirit of NEPA. Subsequent site-specific analysis, prompted by a proposal from a lessee of one tract, may result in a finding of no significant environmental impact. Obviously, a comprehensive analysis of cumulative impacts of several oil and gas development activities must be done before any single activity can proceed. Otherwise, a piecemeal invasion of the forests would occur, followed by the realization of a significant and irreversible impact. *See e.g., Cady v. Morton,* 527 F.2d 786 (9th Cir. 1975); *Trout Unlimited v. Morton,* 509 F.2d 1276 (9th Cir.1974); 40 C.F.R. § 1508.-27(b)(7).

The issuance of a lease with an NSO stipulation does not guarantee an EIS before any development would occur. In fact, NSO stipulations can be modified or removed without an EIS. Gallatin Environmental Analysis, page 3 (discussing re-evaluation of NSO stipulations in the Crazy Mountains roadless area). This court is compelled to set aside the decisions of defendants to lease without preparation of an EIS. The idea of possible site specific assessments in the future does not comply with the objective of protecting the area for possible wilderness designation.

> ... the promise of a site specific EIS in the future is meaningless if later analysis cannot consider wilderness preservation as an alternative to development.

*California v. Block,* 690 F.2d 753 at 762–763 (9th Cir.1982).

## II. ENDANGERED SPECIES ACT

The second issue before the court involves federal agency compliance with the provisions of the Endangered Species Act ("ESA"). 16 U.S.C. §§ 1531 *et seq.* (1976).

■ Plaintiffs challenge the sufficiency of the biological opinions, prepared by the Fish and Wildlife Service as mandated by Section 1536(b) of ESA. The court finds federal defendants' compliance with ESA to be analogous to their compliance with NEPA. The biological opinions examine the effects of oil and gas activity only so far as the leasing stage, asserting lack of information to project consequences of further development. Here again, the defendants rely on stipulations to protect the threatened and endangered species when subsequent intrusion into the critical habitats occurs. The potential for a piecemeal invasion of habitat is present when the agency is allowed to lease without a comprehensive analysis of all stages of oil and gas development. *See, North Slope Borough v. Andrus,* 642 F.2d 589 (D.C.Cir. 1980). The environmental assessments of both the Flathead and the Gallatin warn that this piecemeal approach could lead to "... a chipping away and deterioration of important habitat...." Flathead EA p. 109–6, Gallatin EA App. D p. 7.

The mandate of the Endangered Species Act is to obtain a comprehensive Biological Opinion designed to conserve endangered life and threatened species and their ecosystems. 16 U.S.C. § 1531. Essentially, the defendants' purpose here was to expeditiously issue oil and gas leases.

## III. CONCLUSION

The federal agencies violated the procedural requirements of NEPA by failing to prepare an EIS on the effects of oil and gas activity on the Flathead and Gallatin National Forests. Additionally, they violated ESA by failing to analyze the consequences of all stages of oil and gas activity on the forests.

Therefore, under the provisions of 5 U.S.C. § 706, the agency actions allowing the issuance of the oil and gas leases on the Flathead and Gallatin National Forests are HEREBY SET ASIDE. The defendants are enjoined from further recommendations to lease and issuance of leases pending compliance with NEPA and ESA.

Plaintiffs' motion for summary judgment is GRANTED.

Defendants' motion for summary judgment is DENIED.

Parties shall bear their own costs.